Filed 9/10/14; pub. order 9/17/14 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LOS ALAMITOS UNIFIED SCHOOL DISTRICT, Plaintiff and Respondent, v. HOWARD CONTRACTING, INC., Defendant and Appellant. | G049194 (Super. Ct. No. 30-2012-00576703) O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Randell L. Wilkinson, Judge (retired judge of the Orange Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.), and William M. Monroe, Judge. Affirmed. Postjudgment order. Affirmed.

Mahoney & Soll, Paul M. Mahoney and Richard A. Soll for Defendant and Appellant.

Atkinson, Andelson, Loya, Ruud & Romo, Martin A. Hom and Jennifer D. Cantrell for Plaintiff and Respondent.

\* \* \*

The primary issue presented by this appeal is a legal one: Does Education Code section 17406 exempt school districts from obtaining competitive bids when entering into what are known as "lease-leaseback" agreements to improve school property? We conclude the answer is yes. More than 40 years ago, the California Attorney General concluded the language of the statute is plain, unambiguous, and explicit, and does not impose bid requirements on school districts. We agree, and nothing has occurred in the interim that would change our conclusion.

Los Alamitos Unified School District (the District) filed an action to validate its lease-leaseback agreement with a contractor performing improvements on the track and athletic field of the District's high school. Another contractor, Howard Contracting, Inc. (Howard), filed an answer, claiming the lease-leaseback agreement was unconstitutional, illegal, and invalid because the District did not obtain competitive bids for the project. The trial court did not err in granting the District's motion for summary judgment, as the District was not required to obtain competitive bids under Education Code section 17406. We affirm the judgment in favor of the District.

We also conclude the trial court did not err by denying Howard's motion to tax the costs of service of process. Howard has failed to provide any serious argument why the statutorily authorized costs of service were not properly awarded to the District as the prevailing party. We affirm the postjudgment order regarding costs.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

The District entered into a lease-leaseback agreement with third party contractor Byrom-Davey, Inc., for a construction project involving upgrades and improvements to the District's high school track and athletic field (the Project). The agreement was authorized by the District's governing board of education.

In June 2012, the District filed a complaint, pursuant to Code of Civil Procedure section 860, to validate the lease-leaseback agreement. Pursuant to a court

2

order, a copy of the summons was published in the Orange County Register, and posted in public places within the District's boundaries. Howard filed an answer. The District demurred to Howard's answer; the demurrer was sustained without leave to amend as to the first affirmative defense that the summons was not properly served, but overruled as to all other affirmative defenses.

The District filed a motion for summary judgment or, in the alternative, summary adjudication. Following briefing and a hearing, the trial court granted the motion for summary judgment. Judgment was entered. Howard filed a motion for a new trial, which the court denied.

The trial court granted in part and denied in part Howard's motion to tax costs. Howard filed a timely notice of appeal from the judgment and the postjudgment order regarding costs.

DISCUSSION

I.

*MOTION FOR SUMMARY JUDGMENT*

"A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. [Citation.]" (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.) A plaintiff moving for summary judgment must prove each element of each cause of action. (Code Civ. Proc., § 437c, subd. (p)(1).) If the moving plaintiff satisfies this initial burden, the burden shifts to the defendant to set forth "specific facts" showing that a triable issue of material fact exists as to a cause of action or a defense. (*Ibid.*) "We review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports. [Citation.]" (*Merrill v. Navegar, Inc.*, *supra*, at p. 476.)

3

The lease-leaseback agreement between the District and Byrom-Davey was entered into pursuant to Education Code 17406, subdivision (a), which provides: "Notwithstanding Section 17417,[1] the governing board of a school district, without advertising for bids, may let, for a minimum rental of one dollar ($1) a year, to any person, firm, or corporation any real property that belongs to the district if the instrument by which such property is let requires the lessee therein to construct on the demised premises, or provide for the construction thereon of, a building or buildings for the use of the school district during the term thereof, and provides that title to that building shall vest in the school district at the expiration of that term. The instrument may provide for the means or methods by which that title shall vest in the school district prior to the

---

[1] Education Code section 17417 provides: "After the governing board of a school district has complied with Section 17402, it shall, in a regular open meeting, adopt a resolution declaring its intention to enter into a lease or agreement pursuant to this article. The resolution shall describe, in any manner to identify it, the available site upon which the building to be used by the district shall be constructed, shall generally describe the building to be constructed and state that the building shall be constructed pursuant to the plans and specifications adopted by the governing board therefor, shall, if that is the case, state the minimum yearly rental at which the governing board will lease real property belonging to the district upon which the building is to be constructed, and shall state the maximum number of years for which the school district will lease the building or site and building, as the case may be, and shall state that the proposals submitted therefor shall designate the amount of rental, which shall be annual, semiannual, or monthly, to be paid by the school district for the use of the building, or building and site, as the case may be. The resolution shall fix a time, not less than three weeks thereafter for a public meeting of the governing board to be held at its regular place of meeting, at which sealed proposals to enter a lease or agreement with the school district will be received from any person, firm, or corporation, and considered by the governing board. Notice thereof shall be given in the manner provided in Section 17469. [¶] At the time and place fixed in the resolution for the meeting of the governing body, all sealed proposals which have been received shall, in public session, be opened, examined, and declared by the board. Of the proposals submitted which conform to all terms and conditions specified in the resolution of intention to enter a lease or agreement and which are made by responsible bidders, the proposal which calls for the lowest rental shall be finally accepted, or the board shall reject all bids. The board is not required to accept a proposal, or else reject all bids, on the same day as that in which the proposals are opened."

4

expiration of that term, and shall contain such other terms and conditions as the governing board may deem to be in the best interest of the school district." Thus, section 17406, subdivision (a) expressly provides that notwithstanding the bidding process established by Education Code section 17417, the District was permitted to engage in the type of transaction at issue here "without advertising for bids."

In its motion for summary judgment, the District offered admissible evidence that it owns the land to be leased; Byrom-Davey, the contractor for the Project, agreed to construct the Project for a guaranteed maximum price; and title to the site and all improvements made by the Project will vest in the District at the end of the lease term. Therefore, the District met its initial burden of establishing the necessary elements of its validation action.

Howard did not challenge that the District had met its initial burden in the trial court, and does not do so on appeal. Rather, Howard argues that the use of the lease-leaseback process was unconstitutional, unconscionable, illegal, and a theft of public funds. Howard argues that despite the language of Education Code section 17406, subdivision (a), specifying lease-leaseback arrangements may be entered into "without advertising for bids," California's public contract law requiring competitive bidding applied here, making the agreement between the District and Byrom-Davey illegal.[2]

The District contends the language of Education Code section 17406 exempts lease-leaseback agreements from the competitive bidding that would otherwise apply to a public works contract. The great weight of authority supports this interpretation of section 17406.

The Attorney General interpreted an earlier version of Education Code section 17406 and concluded it exempted school district lease-leaseback arrangements

---

[2] All of Howard's arguments are based on the lack of a competitive bidding process for the Project. Howard does not raise any separate argument based on unconstitutionality, unconscionability, or illegality.

5

from the competitive bidding process.  The predecessor of section 17406 provided:  "The governing board of a school district may let, at a minimum rental of one dollar ($1) a year, to any person, firm, or corporation any real property which belongs to the district if the instrument by which such property is let requires the lessee therein to construct on the demised premises, or provide for the construction thereon of, a building or buildings for the use of the school district during the term thereof, and provides that title to such building shall vest in the school district at the expiration of such term.  Such instrument may provide for the means or methods by which such title shall vest in the school district prior to the expiration of such term, and shall contain such other terms and conditions as the governing board may deem to be in the best interest of the school district." (Ed. Code, former § 15705; Stats. 1959, ch. 2, § 1, pp. 1086-1087.)[3]

In 1973, the Attorney General interpreted Education Code former section 15705 as follows:  "There is no question but that the Legislature has plainly, unambiguously, and explicitly imposed notice and bid requirements with respect only to construction authorized by [Education Code former] section 15706 and not to that authorized by section 15705.  Considerations of wisdom, expediency, or policy suggest a contrary conclusion but such factors may be effectuated only by amendment through the legislative process rather than judicial construction.  Such judicial restraint prevents inadvertently invalidating such construction, without notice or bids, as may have occurred pursuant to the provisions of section 15705.  [¶] It is concluded that the Legislature excluded an arrangement entered into under section 15705 from the notice and bid requirements.  Because a school district is not required to obtain bids for lease arrangements under section 15705, it may lease its property for the purpose of permitting

---

[3] In 1976, Education Code former section 15705 was renumbered as Education Code former section 39305.  (Stats. 1976, ch. 1010, § 2.)  In 1986, the language "without advertising for bids" was added to the statute.  (Stats. 1986, ch. 886, § 28.)  Finally, the statute was renumbered as Education Code section 17406 in 1996, without substantive change.  (Stats. 1996, ch. 277, §§ 3, 6.)

6

the construction thereon of school buildings which the district will lease at such rental rates as the governing board deems in the best interests of the district without reference to competitive bidding." (56 Ops.Cal.Atty.Gen. 571, 581 (1973).)

In 2004, the California Legislature sought to amend Education Code section 17406 to require that school districts solicit competitive bids for lease-leaseback arrangements.[4] The proposed legislation was vetoed by the Governor: "I am supportive of using a competitive process for public works projects and understand that this bill is needed to clarify that process. However, this bill imposes restrictions on lease-leaseback contracts that could limit competition, inadvertently limit schools['] flexibility, and drive higher administrative costs; thereby potentially increasing the overall cost of school facility construction. [¶] For this reason, I cannot sign this measure." (Governor's veto message to Assem. on Assem. Bill No. 1486 (2003-2004 Reg. Sess.) (Sept. 24, 2004).) The attempt to amend section 17406 to delete reference to the language "without advertising for bids" implies that section 17406 as it reads now does not require competitive bidding.

---

[4] The legislation would have amended the language of Education Code section 17406 to read as follows: "(a) In order to enable school districts to let real property for the purpose of acquiring, financing, or constructing facilities, and notwithstanding Section 17417, the governing board of a school district, through the competitive proposal process set forth in Article 2.2 (commencing with Section 17429.1), may let, for a minimum rental of one dollar ($1) a year, to any person, firm, or corporation any real property that belongs to the district if the instrument by which the property is let requires the lessee therein to construct on the demised premises, or provide for the construction thereon of, a building or buildings for the use of the school district during the term thereof, and provides that title to that building shall vest in the school district at the expiration of that term. The instrument may provide for the means or methods by which that title shall vest in the school district prior to the expiration of that term, and shall contain any other terms and conditions as the governing board may deem to be in the best interest of the school district. [¶] (b) Any rental of property that complies with subdivision (a) shall be deemed to have thereby required the payment of adequate consideration for purposes of Section 6 of Article XVI of the California Constitution." (Legis. Counsel's Dig., Assem. Bill No. 1486 (2003-2004 Reg. Sess.).)

Howard argues the procedures used by the District in this case circumvent the competitive bidding process required by California law. The purpose of competitive bidding in public works contracts is "'to guard against favoritism, improvidence, extravagance, fraud and corruption; to prevent the waste of public funds; and to obtain the best economic result for the public' [citation]." (*Domar Electric, Inc. v. City of Los Angeles* (1994) 9 Cal.4th 161, 173.) But, "absent a statutory requirement, a public entity is not bound to engage in competitive bidding. [Citations.]" (*San Diego Service Authority for Freeway Emergencies v. Superior Court* (1988) 198 Cal.App.3d 1466, 1469.) Howard does not cite to any statute that required the District to employ competitive bidding for the Project, other than Education Code sections 17406 and 17417. And, as explained *ante*, those statutes, when read together, relieved the District of any requirement to use competitive bidding for the Project.

Howard contends the language of Education Code section 17406 applies only to one of the agreements necessary to enter into a lease-leaseback agreement. The lease-leaseback agreement required both a site lease agreement, by which the District leased its property to Byrom-Davey for $1 per year to gain title and access to the property during the construction, and a sublease agreement, by which the District leased back the property from Byrom-Davey for an agreed-upon amount which covered the costs of construction and financing. According to Howard, section 17406 is intended only to apply to the site lease agreement, not the sublease agreement. Howard claims the purpose of the statute is to avoid a situation in which both agreements were competitively bid, and two different contractors made the winning bids on the two different agreements. The terms of the statute, however, appear to prevent the potential problem Howard identifies. Section 17406 sets the minimum annual rental fee to be paid by the contractor to the school district at $1. No one who actually wanted to win the Project could ever be underbid in the site lease agreement.

8

Howard also argues that because a more specific statute must take precedence over a general statute, Education Code section 17417 takes precedence over Education Code section 17406. (*Rose v. State of California* (1942) 19 Cal.2d 713, 723-724 ["a general provision is controlled by one that is special, the latter being treated as an exception to the former"]; *Craddock v. Kmart Corp.* (2001) 89 Cal.App.4th 1300, 1310.) Nothing supports the application of this principle to the statutes in this case. To the contrary, section 17406, subdivision (a) begins with the language, "[n]otwithstanding Section 17417," which shows section 17406 provides an exception to the more general section 17417.

Howard contends that if Education Code section 17406 applies to the entire series of agreements that form a lease-leaseback arrangement between a school district and a contractor, Education Code section 17417 would be rendered a nullity "as there is no scenario under which Section 17417 would then apply." Section 17417 applies generally to "a lease or agreement pursuant to this article." Title 1, division 1, part 10.5, chapter 4, article 2 of the Education Code applies even more generally to leasing property. There would appear to be many ways in which section 17417 would be used, even if lease-leaseback arrangements are excluded from it.

Howard complains that a procedural irregularity occurred when the motion for summary judgment was heard by retired Judge Randell Wilkinson. Article VI, section 6, subdivision (e) of the California Constitution gives the Chief Justice the authority to assign a retired judge to sit by assignment. Howard did not have the right to have any particular judge consider the motion for summary judgment. The record does not show Howard objected to Judge Wilkinson's participation in the case at any time before Howard filed its motion for a new trial. (*People v. Scott* (1997) 15 Cal.4th 1188, 1207 [a party cannot fail to request a judge's disqualification, then argue for reversal of an unfavorable ruling on appeal].)

9

Howard next argues the summons was defective.  Service of process in this case was governed by Code of Civil Procedure section 860 et seq. and Government Code section 6063.  Code of Civil Procedure section 861 provides:  "Jurisdiction of all interested parties may be had by publication of summons pursuant to Section 6063 of the Government Code in a newspaper of general circulation designated by the court, published in the county where the action is pending and whenever possible within the boundaries of the public agency . . . ."  Government Code section 6063 provides:  "Publication of notice pursuant to this section shall be once a week for three successive weeks.  Three publications in a newspaper regularly published once a week or oftener, with at least five days intervening between the respective publication dates not counting such publication dates, are sufficient.  The period of notice commences upon the first day of publication and terminates at the end of the twenty-first day, including therein the first day."  Code of Civil Procedure section 861.1 provides:  "The summons shall be directed to 'all persons interested in the matter of [specifying the matter],' and shall contain a notice to all persons interested in the matter that they may contest the legality or validity of the matter by appearing and filing a written answer to the complaint not later than the date specified in the summons, which date shall be 10 or more days after the completion of publication of the summons. . . . Except as otherwise specified in this section the summons shall be in the form prescribed in Section 412.20."

Here, the first day that notice was published was June 28, 2012.  The notice period terminated 21 days later, on July 19.  Service was completed 10 days later, on July 29.  Exhibit A to the summons correctly identified July 29, 2012 as the date on which a response to the validation action was due.  Howard correctly notes that the required summons form used in this case (which was prepared by the Judicial Council of California, and the use of which complies with the relevant statutes (see Code Civ. Proc., § 412.20, subd. (c))), advised interested persons that they must respond in 30 days, rather

10

than providing a date certain for a response. Exhibit A to the summons provided the date certain. We conclude this notice was sufficient.

*Katz v. Campbell Union High School Dist.* (2006) 144 Cal.App.4th 1024 does not compel a different conclusion. In *Katz*, the summons in a validation action contained two defects: (1) the summons did not specify a concrete response date, and (2) the summons did not provide the full amount of time to respond. (*Id.* at p. 1029.) As noted *ante*, in this case, the summons including its exhibit did contain a date certain for a response, and that date was proper in light of the relevant statutes.

Howard also argues the District impermissibly began construction of the Project before judgment was entered in the validation action. Howard is incorrect. The relevant statutes permit, but do not require, a public agency to commence a validation action. (Code Civ. Proc., § 860; Gov. Code, § 53511, subd. (a).)[5] If no validation action is commenced by a public agency, its decision self-validates after 60 days, unless an interested person commences his or her own action. "[A]n agency may indirectly but effectively 'validate' its action *by doing nothing to validate it*; unless an 'interested person' brings an action of his own under [Code of Civil Procedure] section 863 within the 60-day period, the agency's action will become immune from attack whether it is legally valid or not." (*City of Ontario v. Superior Court* (1970) 2 Cal.3d 335, 341-342.) The District was not required to file the underlying validation action, and was not required to wait until the conclusion of the validation action before beginning work on the Project.

---

[5] "A public agency *may* upon the existence of any matter which under any other law is authorized to be determined pursuant to this chapter, and for 60 days thereafter, *bring an action* in the superior court of the county in which the principal office of the public agency is located to determine the validity of such matter." (Code Civ. Proc., § 860, italics added.) "A local agency *may bring an action* to determine the validity of its bonds, warrants, contracts, obligations or evidences of indebtedness pursuant to Chapter 9 (commencing with Section 860) of Title 10 of Part 2 of the Code of Civil Procedure." (Gov. Code, § 53511, subd. (a), italics added.)

11

## II.

### *MOTION TO TAX COSTS*

The trial court denied Howard's motion to tax the District's service of process costs. In a validation action, "[t]he costs of any proceeding or action . . . may be allowed and apportioned between the parties or taxed to the losing party in the discretion of the court." (Code Civ. Proc., § 868.) We review the trial court's decision for abuse of discretion. (*Foothill-De Anza Community College Dist. v. Emerich* (2007) 158 Cal.App.4th 11, 29.) The costs of service of process by publication are recoverable. (Code Civ. Proc., § 1033.5, subd. (a)(4)(C).) Therefore, the burden is on Howard to show the costs claimed by the District for service are unnecessary or unreasonable. (*Foothill-De Anza Community College Dist. v. Emerich*, *supra*, at p. 29.) Howard's only argument is that it is improper to shift the costs of service to a member of the public because it chose to exercise its constitutional right to challenge the validation of the District's action. We find no abuse of discretion by the trial court in awarding the District its reasonable costs as prescribed by statute.

### DISPOSITION

The judgment is affirmed. The postjudgment order is affirmed. Respondent to recover costs on appeal.

FYBEL, J.

WE CONCUR:

MOORE, ACTING P. J.

IKOLA, J.

12

Filed 9/17/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LOS ALAMITOS UNIFIED SCHOOL DISTRICT, <br><br>     Plaintiff and Respondent, <br><br>       v. <br><br> HOWARD CONTRACTING, INC., <br><br>     Defendant and Appellant. | G049194 <br><br> (Super. Ct. No. 30-2012-00576703) <br><br> ORDER GRANTING REQUESTS FOR PUBLICATION |

      Appellant and Respondent have requested that our opinion, filed September 10, 2014, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The requests are GRANTED. The opinion is ordered published in the Official Reports.


                                    FYBEL, J.

WE CONCUR:


MOORE, ACTING P. J.


IKOLA, J.