Filed 1/23/15  McGee v. Torrance U. Sch. Dist. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| JAMES D. McGEE, | B252570 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. YC068686) |
| v. | |
| TORRANCE UNIFIED SCHOOL DISTRICT et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stuart M. Rice, Judge.  Affirmed in part; reversed in part and remanded.

Carlin Law Group and Kevin R. Carlin for Plaintiff and Appellant.

Briggs Law Corporation, Cory J. Briggs, Mekaela M. Gladden and Anthony N. Kim for Kern County Taxpayers Association, Sacramento Taxpayers Association and San Diegans for Open Government as Amicus Curiae on behalf of Plaintiff and Appellant.

Atkinson, Andelson, Loya, Ruud & Romo, Martin A. Hom and Jennifer D. Cantrell for Defendant and Respondent Torrance Unified School District.

Marks, Finch, Thornton & Baird, P. Randolph Finch, Jr., and Jason R. Thornton for Defendant and Respondent Barnhart-Balfour Beatty, Inc.

Fagen Friedman & Fulfrost, Kathy McKee, Paul G. Thompson, James Traber and Luke Boughen for California's Coalition for Adequate School Housing as Amicus Curiae on behalf of Defendant and Respondent Torrance Unified School District.

* * * * * *

Appellant James D. McGee challenged agreements between a school district and construction company for modernizing three schools within the district. McGee's principal claim was that the school district failed to follow the competitive bid process McGee believed was required prior to awarding the contracts. The district, on the other hand, contended that the competitive bid process was not required because the contracts in the form of lease-leaseback transactions were exempt from the competitive bid process under Education Code section 17406.[1] After sustaining the school district's and the construction company's demurrers, the trial court dismissed the lawsuit.

The crux of this case is whether section 17406 exempts lease-leaseback contracts from the competitive bidding process. Following the recent case *Los Alamitos Unified School Dist. v. Howard Contracting, Inc.* (2014) 229 Cal.App.4th 1222 (*Los Alamitos*), we conclude it does. It follows that the trial court properly sustained the demurrer to all of McGee's causes of action based on the claim that competitive bidding was required to enter into the lease-leaseback agreements.

However, one cause of action alleged a conflict of interest by the contractor and was not based on the failure to obtain competitive bids. With respect to that cause of action, we conclude the trial court should have overruled the demurrer. "[O]nly public officials or employees can violate [Government Code] section 1090," the statute on which McGee relies. (*Klistoff v. Superior Court* (2007) 157 Cal.App.4th 469, 473.) Here, at this stage in the proceedings the allegation that the contractor acted as an officer when it advised the school district was sufficient to withstand demurrer.

---

[1]     Undesignated statutory citations are to the Education Code unless otherwise noted.

We reverse the judgment of dismissal and order the trial court to reinstate McGee's cause of action alleging a conflict of interest. In all other respects, we conclude the demurrers were properly sustained.

## FACTS AND PROCEDURE

In the spring of 2013, the board of the Torrance Unified School District (District) adopted three separate resolutions to approve construction contracts with Barnhart-Balfour Beatty, Inc., doing business as Balfour Beatty Construction (Balfour), for Hickory Elementary School, Madrona Middle School, and North Hills High School. The guaranteed maximum price of the three projects exceeded $48 million. With respect to each school, the District and Balfour signed three agreements—a site lease (leasing land from the District to Balfour), a sublease (leasing land from Balfour to the District), and a construction agreement (between the District and Balfour). Under the terms of the agreements, Balfour would lease the land from the District and the District then leases back the land and payments of the leasebacks cover the cost of the construction projects.

McGee seeks to invalidate these agreements. In his first amended complaint, McGee alleged causes of action for (1) failure to comply with section 20110 of the Public Contract Code; (2) breach of fiduciary duty; (3) failure to comply with section 17417 of the Education Code; (4) contractor conflict of interest; (5) improper use of section 17400 et seq. of the Education Code; (6) improper delegation of discretion and (7) declaratory relief.

Putting aside the cause of action for conflict of interest, the remaining causes of action are premised on McGee's contention that that the district could not enter into lease-leaseback agreements with Balfour. In his first cause of action, McGee alleged that sections 17400-17429 do not authorize the lease-leaseback agreements in this case because they were "sham leases entered into as a subterfuge to avoid the competitive bidding requirements of Public Contract Code § 20110 et seq. . . ." The alleged breach of a fiduciary duty identified in the second cause of action similarly is premised on a failure to obtain competitive bids. McGee alleged that the district failed to consider less expensive proposals or research that it obtained the best price for the work. The third cause of action for failure to comply with section 17417 is based on the alleged failure to comply with competitive bid requirements

3

outlined in section 17417. The alleged improper use of section 17400 et seq. is similar to the first cause of action in that McGee alleges that the financing was not "genuine" because the district had sufficient funds available to pay the cost of construction. In his sixth cause of action for improper delegation, McGee argues the district failed to properly evaluate prospective contractors and thereby improperly delegated legislative discretion. The seventh cause of action for declaratory relief is based on a dispute between McGee and the District and Balfour regarding the requirement for the competitive bid process in the Education Code and Public Contract Code.

In contrast to the foregoing causes of action, the cause of action based on conflict of interest does not concern the district's use of the lease-leaseback agreements and the failure to obtain competitive bids. With respect to the alleged conflict of interest, McGee alleged the District employed a contractor to provide professional bond program management and construction management services concerning school construction bonds, which fund the challenged projects. According to the operative complaint, Balfour acted as an officer of the District. A conflict of interest arose based on Balfour providing "preconstruction services" to the District. The conflict of interest arose because Balfour could use its position "for its own interest rather than the interest of the" District. Specifically the contractor could set overpriced budgets, recommend unnecessary materials, and make other recommendations increasing the overall cost of the projects.

McGee's first amended complaint incorporated a report from the executive officer of the California State Allocation Board (SAB) drafted in 2004. It appears the report was presented at a SAB meeting on January 28, 2004. The report noted that "[t]here was no consensus among the Committee members regarding the content or conclusions of this report or what actions the SAB should take, if any."

The purpose of the report was "[t]o discuss the use of lease lease-back agreements for project delivery of facilities funded through the School Facility Program . . . ." That report analyzed lease-leaseback agreements under section 17406. It concluded that lease-leaseback agreements were used when the contractor financed the construction and when a

4

school district had funds and the lease terminated at the end of construction.  It described some lease arrangements as a subterfuge to avoid the competitive bid process.

The authors were concerned that school districts improperly relied on section 17406 to enter construction contracts without competitive bidding.  The authors believed that section 17406 exempted from the competitive bid process only the property lease from district to developer (site lease), not the leaseback from developer to school district.  Notwithstanding its conclusion, the SAB recognized that "current interpretations of EC 17406 hold that competitive bidding is not required."

The District and Balfour demurred to the complaint.  The court sustained the demurrers to all causes of action.  A judgment of dismissal ensued.  This appeal followed.

## DISCUSSION

"[O]ur standard of review is clear:  '"We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.]  We also consider matters which may be judicially noticed."  [Citation.]  Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]  When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.  [Citation.]  And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff.'"  (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.)

Although appellant alleged numerous causes of action, they essentially raise two legal issues:  (1) Does section 17406 exempt the lease-leaseback transactions entered into between the District and Balfour from the competitive bid process, and (2) did Balfour have a conflict of interest?  We discuss those issues in turn and then consider McGee's requests for judicial notice.

5

*1. Section 17406 Does Not Require Competitive Bids*

The principal issue on appeal is whether the lease-leaseback agreements require competitive bidding. Competitive bidding is required under section 17417 unless section 17406 creates an exemption from that process.**2** We conclude it does.

Section 17417 provides:

"After the governing board of a school district has complied with Section 17402,[**3**] it shall, in a regular open meeting, adopt a resolution declaring its intention to enter into a lease or agreement pursuant to this article. The resolution shall describe, in any manner to identify it, the available site upon which the building to be used by the district shall be constructed, shall generally describe the building to be constructed and state that the building shall be constructed pursuant to the plans and specifications adopted by the governing board therefor, shall, if that is the case, state the minimum yearly rental at which the governing board will lease real property belonging to the district upon which the

---

**2**    Section 17406 has been amended effective January 1, 2015.

**3**    Section 17402 provides:

"Before the governing board of a school district enters into a lease or agreement pursuant to this article, it shall have available a site upon which a building to be used by the district may be constructed and shall have complied with the provisions of law relating to the selection and approval of sites, and it shall have prepared and shall have adopted plans and specifications for the building that have been approved pursuant to Sections 17280 to 17316, inclusive. A district has a site available for the purposes of this section under any of the following conditions:

"(a) If it owns a site or if it has an option on a site that allows the school district or the designee of the district to purchase the site. Any school district may acquire and pay for an option containing such a provision.

"(b) If it is acquiring a site by eminent domain proceedings and pursuant to Chapter 6 (commencing with Section 1255.010) of Title 7 of Part 3 of the Code of Civil Procedure, the district has obtained an order for possession of the site, and the entire amount deposited with the court as the probable amount of compensation for the taking has been withdrawn.

"(c) In the case of a district qualifying under Section 17410, if it is leasing a site from a governmental agency pursuant to a lease having an original term of 35 years or more or having an option to renew that, if exercised, would extend the term to at least 35 years."

building is to be constructed, and shall state the maximum number of years for which the school district will lease the building or site and building, as the case may be, and shall state that the proposals submitted therefor shall designate the amount of rental, which shall be annual, semiannual, or monthly, to be paid by the school district for the use of the building, or building and site, as the case may be.  The resolution shall fix a time, not less than three weeks thereafter for a public meeting of the governing board to be held at its regular place of meeting, at which sealed proposals to enter a lease or agreement with the school district will be received from any person, firm, or corporation, and considered by the governing board.  Notice thereof shall be given in the manner provided in Section 17469.

"At the time and place fixed in the resolution for the meeting of the governing body, all sealed proposals which have been received shall, in public session, be opened, examined, and declared by the board.  Of the proposals submitted which conform to all terms and conditions specified in the resolution of intention to enter a lease or agreement and which are made by responsible bidders, the proposal which calls for the lowest rental shall be finally accepted, or the board shall reject all bids.  The board is not required to accept a proposal, or else reject all bids, on the same day as that in which the proposals are opened."

Section 17406, subdivision (a) provides:  "Notwithstanding Section 17417, the governing board of a school district, without advertising for bids, may let, for a minimum rental of one dollar ($1) a year, to any person, firm, or corporation any real property that belongs to the district if the instrument by which this property is let requires the lessee therein to construct on the demised premises, or provide for the construction thereon of, a building or buildings for the use of the school district during the term of the lease, and provides that title to that building shall vest in the school district at the expiration of that term.  The instrument may provide for the means or methods by which that title shall vest in the school district prior to the expiration of that term, and shall contain other terms and conditions as the governing board may deem to be in the best interest of the school district."

In *Los Alamitos, supra*, 229 Cal.App.4th 1222, a contractor filed an action invalidating a lease-leaseback agreement between another contractor and a school district.  The court concluded that section 17406 "exempt[s] school districts from obtaining

competitive bids when entering . . . 'lease-leaseback' agreements to improve school property." (*Los Alamitos*, at p. 1224.) The court explained that "[m]ore than 40 years ago, the California Attorney General concluded the language of the statute is plain, unambiguous, and explicit, and does not impose bid requirements on school districts. We agree, and nothing has occurred in the interim that would change our conclusion." (*Ibid.*)

Los Alamitos relied principally on the plain language of section 17406. (*Los Alamitos, supra*, 229 Cal.App.4th at p. 1226.) "[S]ection 17406, subdivision (a) expressly provides that notwithstanding the bidding process established by Education Code section 17417, the District was permitted to engage in the type of transaction at issue here 'without advertising for bids.'" (*Ibid.*) *Los Alamitos* also relied on an opinion by the Attorney General interpreting the predecessor to section 17406 in which the Attorney General concluded that "'[t]here is no question but that the Legislature has plainly, unambiguously, and explicitly imposed notice and bid requirements with respect only to construction authorized by [Education Code former] section 15706 and not to that authorized by section 15705. Considerations of wisdom, expediency, or policy suggest a contrary conclusion but such factors may be effectuated only by amendment through the legislative process rather than judicial construction. Such judicial restraint prevents inadvertently invalidating such construction, without notice or bids, as may have occurred pursuant to the provisions of section 15705. [¶] It is concluded that the Legislature excluded an arrangement entered into under section 15705 from the notice and bid requirements. Because a school district is not required to obtain bids for lease arrangements under section 15705, it may lease its property for the purpose of permitting the construction thereon of school buildings which the district will lease at such rental rates as the governing board deems in the best interests of the district without reference to competitive bidding.' (56 Ops.Cal.Atty.Gen. 571, 581 (1973).)"[4] (*Id.* at p. 1228.)

---

[4] At the relevant time former section 15705 provided: "The governing board of a school district may let, at a minimum rental of one dollar ($1) a year, to any person, firm, or corporation any real property which belongs to the district if the instrument by which such property is let requires the lessee therein to construct on the demised premises, or provide

8

*Los Alamitos* also reasoned that the failure of a proposed amendment to section 17406 requiring competitive bidding suggested the Legislature was cognizant section 17406 lacked such a requirement. The proposed amendment would have added the following provision: "'(a) In order to enable school districts to let real property for the purpose of acquiring, financing, or constructing facilities, and notwithstanding Section 17417, the governing board of a school district, through the competitive proposal process set forth in Article 2.2 (commencing with Section 17429.1), may let, for a minimum rental of one dollar ($1) a year, to any person, firm, or corporation any real property that belongs to the district if the instrument by which the property is let requires the lessee therein to construct on the demised premises, or provide for the construction thereon of, a building or buildings for the use of the school district during the term thereof, and provides that title to that building shall vest in the school district at the expiration of that term. The instrument may provide for the means or methods by which that title shall vest in the school district prior to the expiration of that term, and shall contain any other terms and conditions as the governing board may deem to be in the best interest of the school district. [¶] (b) Any rental of property that complies with subdivision (a) shall be deemed to have thereby required the payment of adequate consideration for purposes of Section 6 of Article XVI of the California Constitution.' (Legis. Counsel's Dig., Assem. Bill No. 1486 (2003–2004 Reg. Sess.).)" (*Los Alamitos, supra*, 229 Cal.App.4th at p. 1228, fn. 4.)

The proposed amendment did not survive the Governor's veto, at which time the Governor explained: "'I am supportive of using a competitive process for public works projects and understand that this bill is needed to clarify that process. However, this bill imposes restrictions on lease-leaseback contracts that could limit competition, inadvertently

---

for the construction thereon of, a building or buildings for the use of the school district during the term thereof, and provides that title to such building shall vest in the school district at the expiration of such term. Such instrument may provide for the means or methods by which such title shall vest in the school district prior to the expiration of such term, and shall contain such other terms and conditions as the governing board may deem to be in the best interest of the school district.'"

9

limit schools['] flexibility, and drive higher administrative costs; thereby potentially increasing the overall cost of school facility construction. [¶] For this reason, I cannot sign this measure.' (Governor's veto message to Assem. on Assem. Bill No. 1486 (2003–2004 Reg. Sess.) (Sept. 24, 2004).) The attempt to amend section 17406 to delete reference to the language 'without advertising for bids' implies that section 17406 as it reads now does not require competitive bidding." (*Los Alamitos, supra*, 229 Cal.App.4th at pp. 1228-1229.)

The *Los Alamitos* court rejected the argument that the Public Contract Code required competitive bidding. (*Los Alamitos, supra*, 229 Cal.App.4th at p. 1227.) The court also rejected the contention that section 17406 applies only to the site lease in which the district leases the property to the contractor. (*Los Alamitos*, at p. 1229.) The court rejected the contractor's argument that section 17417 would be rendered a nullity if section 17406 applied to both the site lease and the sublease. (*Los Alamitos*, at p. 1230.) The court also rejected the argument that "because a more specific statute must take precedence over a general statute, Education Code section 17417 takes precedence over Education Code section 17406." (*Id.* at p. 1229.) Again relying on the plain language of the statute, the court explained that the term "notwithstanding" in section 17406 indicated that that statute provides an exception to section 17417. (*Los Alamitos*, at pp. 1229-1230.)

We agree with the reasoning and result in *Los Alamitos*. Most importantly, "[i]f the statutory language is clear and unambiguous, our task is at an end, for there is no need for judicial construction. [Citations.] In such a case, there is nothing for the court to interpret or construe." (*MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1082-1083.) The plain language of section 17406 exempts it from the competitive bid requirements of section 17417. The first sentence provides the key phrase "[n]otwithstanding [s]ection 17417." "'The statutory phrase "notwithstanding any other provision of law" has been called a "'term of art'" [citation] that declares the legislative intent to override all *contrary* law.'" (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 983.) Similarly, here the phrase "[n]otwithstanding [s]ection 17417" expresses legislative intent that section 17406 overrides section 17417.

10

Appellant's contrary arguments are not persuasive. There is no statutory basis to distinguish "genuine" and "sham" lease-leaseback transactions. McGee's effort to engraft additional requirements are unpersuasive because they are not based on any statutory language. Nor is section 17406 limited by its terms to apply to the site lease as McGee argues. The statute describes both the lease from the district to the contractor and the construction of buildings for the school district. Moreover, it expressly exempts section 17417 invalidating McGee's argument that the district was required to comply with section 17417. Even assuming that under this interpretation section 17417 is surplusage, that does not show it should be applied to section 17406 when the plain language of section 17406 exempts transactions under that statute from the requirements of section 17417.

Although the SAB report upon which much of McGee's arguments are modeled reached a contrary conclusion, it is not persuasive. The SAB report did not purport to interpret the relevant statute applying cannons of statutory interpretation this court is required to follow. The SAB recognized that's its interpretation was different than existing interpretations. Moreover, it garnered "no consensus among the Committee members." The conclusion that the SAB believes that the competitive bidding process is superior to the process employed by the District in this case, does not show the District was required to obtain competitive bids. If the Legislature shares McGee's view that the competitive bid process is superior, it may amend section 17406 to specify that it requires a school district to obtain competitive bids.

## 2. Conflict of Interest

The remaining cause of action concerned an alleged conflict of interest between Balfour and the District. The issue for purposes of this appeal is whether the allegations were sufficient to withstand demurrer.

Government Code section 1090 provides: "Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members. Nor shall state, county, district, judicial district, and city officers

11

or employees be purchasers at any sale or vendors at any purchase made by them in their official capacity."

Government Code section 1090 "places responsibility for acts of self-dealing *on the public servant* where he or she exercises sufficient control *over the public entity*, i.e., where the agent is in a position to contract in his or her 'official capacity.'" (*California Housing Finance Agency v. Hanover/California Management & Accounting Center, Inc.* (2007) 148 Cal.App.4th 682, 690.) "'[Government Code] [s]ection 1090 is triggered when a public official *receives any profit from a public contract* and includes the acceptance of a bribe in return for influencing the public entity to enter into a particular contract.'" (*Eden Township Heathcare Dist. v. Sutter Health* (2011) 202 Cal.App.4th 208, 225.) "The interest proscribed by Government Code section 1090 is an interest in the contract. The purpose of the prohibition is to prevent a situation where a public official would stand to gain or lose something with respect to the making of a contract over which in his official capacity he could exercise some influence." (*People v. Vallerga* (1977) 67 Cal.App.3d 847, 867, fn. 5.)

In *Hub City Solid Waste Services, Inc. v. City of Compton* (2010) 186 Cal.App.4th 1114, Division Four of this court held that an independent contractor who advised city staff regarding waste management could be held liable under Government Code section 1090. The independent contractor had significant influence in that he "identified vendors, and negotiated to acquire trucks, refuse containers, and real estate on behalf of the city. He negotiated a transfer station disposal contract and a contract for a maintenance facility." He also had "discretion over which vendors to solicit, and influenced the city's staffing decisions." He held the city "with the acquisition of insurance, and discussed the possibility of outsourcing waste hauling operations to a private contractor." The independent contractor "acted as the director of the in-house waste division, working alongside city employees, overseeing day-to-day operations . . . , and taking responsibility for public education and compliance with state-mandated recycling and waste reduction efforts." (*Hub City Solid Waste Services, Inc.*, at pp. 1119-1120; but see *People v. Christiansen* (2013) 216 Cal.App.4th 1181, 1189 [in criminal context independent contractor cannot be employee of city].)

12

Here, McGee alleges the contractor performed the functions of "officers, employees and agents of District." At this early stage in the proceedings, the allegation must be credited. (*Zelig v. County of Los Angeles, supra*, 27 Cal.4th at p. 1126.) The trial court therefore should have overruled the demurrer to McGee's fourth cause of action.

## 3. *Judicial Notice*

McGee challenges the trial court's ruling denying judicial notice of newspaper articles and a legal opinion drafted by attorneys at the law firm Best Best & Krieger, and an article delivered at a conference on school facilities. McGee argues the newspaper articles aid in interpretation of statute of "sections 17406 and 17417 to prevent misuse of public funds, fraud, favoritism corruption and stimulate advantageous market place competition in the expenditure of school construction bond proceeds." We disagree.

The newspaper articles are not relevant to statutory interpretation. We have explained the steps necessary for statutory interpretation, none of which involve consulting newspaper articles, articles delivered at conferences, or opinions by law firms. Legislators could not have considered these documents drafted after the laws were codified. The trial court properly denied judicial notice of these items. Moreover, even if the court could have taken judicial notice that the articles had been written, it could not judicially notice the truth of the matter asserted in the articles, McGee's basis for citing them. (See *Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 113.) The legal opinion represents one attorney's analysis of Government Code section 1090 in the context of a water district and is not precedent upon which this court may rely. The attorney's evaluation of a bid in another case is not relevant to any issue in this case.

On appeal, we deny McGee's request for judicial notice of California statute and case law because it is not required. We also deny McGee's request for judicial notice of the briefs in *Los Alamitos*. We have considered McGee's arguments, and whether the briefing was similar in *Los Alamitos* is not helpful to resolving this appeal. Finally, McGee's request for judicial notice of criminal misconduct in connection with awarding contracting bids because they are not relevant to the current appeal. None of the criminal actions involved any party to this appeal. The issue on appeal is not whether the competitive bid process is

13

preferable (which McGee seeks to show through his requests for judicial notice) but instead whether section 17406 requires competitive bids.

Finally, we deny McGee's requests for judicial notice in connection with his opposition to California's Coalition for Adequate School Housing's (CASH's) amicus curiae brief. McGee fails to show they are relevant to this appeal. McGee argues they are relevant because "they go to the credibility and motivation of CASH to make the arguments asserted in their Amicus Briefs" and define the "essence of CASH." The issue is the proper interpretation of section 17406, not the essence of CASH or CASH's motivation for filing an amicus brief. We also decline to take judicial notice of documents on the District's website concerning the construction projects challenged in this case. Those documents are not relevant to any material issue in the case. Nor has McGee demonstrated they are a proper subject of judicial notice.

## DISPOSITION

The judgment is reversed. The trial court is directed to enter an order sustaining the demurrer to all causes of action except the fourth cause of action alleging Balfour had a conflict of interest. The parties shall bear their own costs on appeal.


FLIER, J.

WE CONCUR:


BIGELOW, P. J.


RUBIN, J.

14